## DENVER & R. G. R. CO. v. ARRIGHI.

(Circuit Court of Appeals, Eighth Circuit. March 18, 1904.)

1. MASTER AND SERVANT—RAILROADS—INJURIES TO SERVANT—COUPLING CARS —STATUTES—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.

Act March 2, 1893, c. 196, § 8, 27 Stat. 532 [3 U. S. Comp. St. 1901, p. 3176], providing that any employé of any interstate carrier who may be injured by any car used in interstate traffic by reason of the same not having been equipped with an automatic coupler device coupling by impact shall not be deemed to have assumed the risk thereby occasioned, though continuing in the employment of the carrier after the unlawful use of the car had been brought to his knowledge, did not relieve an employé injured by a car not so equipped from liability for his own contributory negligence.

2. SAME—EVIDENCE.

Plaintiff, a skilled switchman, was injured while attempting to couple two cars equipped with link and pin couplings, with which he was perfectly familiar. The engineer was under his direction at the time, and backed the train so slowly that it barely moved. Plaintiff took hold of the link of the approaching car with his left hand to guide it, and, having done so, left his hand between the drawheads until his fingers were crushed by the impact. *Held*, that under the particular facts appearing in the case the plaintiff was guilty of contributory negligence as a matter of law.

In Error to the Circuit Court of the United States for the District of Colorado.

Arrighi, the plaintiff below, was a switchman in the service of the railroad company in its yards at Salida, Colo. The railroad company was a common carrier engaged in interstate commerce as well as in commerce within the state. On the evening of November 19, 1901, Arrighi was injured while endeavoring to effect a coupling of two narrow-gauge freight cars, one of which was at the time employed in moving interstate traffic. Neither car was equipped with couplers coupling automatically by impact. The drawbars of each were equipped with old-style link and pin couplings. It therefore became necessary for Arrighi to go between the ends of the cars in the performance of his duty. In making the coupling his left hand was crushed between the drawheads, resulting in the loss of the first three fingers thereof and the corresponding metacarpal bones. He brought suit against the railroad company, and at the trial rested his right to recover solely upon the failure of the defendant to comply with the provisions of the act of Congress of March 2, 1893, c. 196 (27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), requiring the equipment of cars used in moving interstate traffic with couplers operating automatically. He recovered a judgment for $10,000, and the defendant prosecuted a writ of error from this court.

Wm. W. Field (Wolcott, Vaile & Waterman and E. N. Clark, on the brief), for plaintiff in error.

Harvey Riddell (William L. Dayton, on the brief), for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The trial court denied a request of the defendant that the jury be instructed to return a verdict in its favor for the reason that the

¶ 1. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

plaintiff was guilty of negligence contributing to his injury. The action of the court in that respect is assigned as error. Prior to the time when the act of Congress became fully operative, the employés of a railroad company subject to its provisions, engaged in coupling cars used in moving interstate traffic, but not equipped with automatic couplers, assumed the ordinary risks and hazards of that employment, and the company was not liable to them for injuries resulting therefrom. The common-law doctrine of the assumption of risk was then applicable. But a new rule is prescribed by the act. It specifically provides that the employés shall no longer rest under the burden of that assumption in respect of any car used contrary to its provisions. While this is true, the railroad company is not thereby deprived of the defense of contributory negligence. With an exception, unnecessary to be noted here, the risks and dangers of an employment which at common law are assumed by the employé are not those which arise from the negligence of either party. And when the burden of those assumed risks and dangers were lifted from the employé by statutory enactment, and cast upon the railroad company, there was not transferred therewith a responsibility for the negligence of the employé himself. The rationale of the doctrine of assumption of risk is not that which supports the rule of contributory negligence. They operate differently, and are dependent upon widely different principles. Railroad Company v. McDade, 24 Sup. Ct. 24, 48 L. Ed. 96; St. Louis Cordage Company v. Miller (C. C. A.) 126 Fed. 495. It cannot be assumed that by the passage of a salutary law designed for the protection of those engaged in a hazardous occupation Congress intended to offer a premium for carelessness, or to grant immunity from the consequences of negligence. The reasonable conclusion is that the defense of contributory negligence is as available to a railroad company after as before the passage of the act of Congress, although it has not complied with its requirements.

The undisputed facts in this case are as follows: The plaintiff was a skillful workman in his calling, having had about 11 years' experience in railroading. He was thoroughly acquainted with the old-style link and pin couplings and the method of operating them. He knew that the cars which he sought to couple were so equipped. There was no defect in the couplings which contributed to the accident. The engine which was moving the car up to make the coupling was being directed by him, and they came up so slowly as to to be barely moving. Not a single fact, circumstance, or condition appeared in connection with the cars, their surroundings, equipment, or operation which was exceptional, or which seemed in any way to contribute to the accident. The plaintiff adopted the most dangerous method of performing his duty. He took hold of the link of the approaching car with his left hand to guide and direct it, and, having done so, he simply left his hand between the drawheads until his fingers were crushed by the impact. His attention was not momentarily distracted; the moving car did not approach more rapidly than he calculated; he did not stumble or lose his balance, nor was he unable to see clearly; he was not unfamiliar in any de-

gree with the character of the appliances about which he was engaged; and it does not even appear that he endeavored to remove his hand. In fact, if the plaintiff had declared that he made no effort to remove his hand from between the drawheads, he would not have added much to the force of the facts and circumstances shown by the record. The plaintiff himself was the principal witness in his own behalf, and the conditions which we have recited were shown almost wholly by his own testimony. The conclusion is irresistible that the plaintiff's injury was caused by his own want of proper care, and was not the result of the ordinary and usual risks and dangers of his employment. Bearing in mind the limitations upon the power of the trial court in respect of the defense of contributory negligence, we are nevertheless of the opinion that upon the evidence then before it the instruction requested should have been given.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.