### TOLEDO, ST. L. & W. R. CO. v. GORDON.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1909. Rehearing Denied February 9, 1910.)

#### No. 1,538.

MASTER AND SERVANT (§ 240*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DEFECTIVE EQUIPMENT OF CARS—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate had been employed for a month as head brakeman on a freight train on defendant's railroad, when, as the train was proceeding at night, it twice broke in two in the same place owing to defective couplers, which, while coupling automatically, would not hold. On the second occasion plaintiff's intestate went alone to the place of separation, and after signaling to the engineer two or three times to move forward and back slowly he came apparently from between the cars and gave a quick signal to back, which was done; but in the meantime he had gone between the cars and was caught and killed between the drawbars as the cars came together. *Held*, that on such facts, which were undisputed, whatever was the cause of his going between the cars, he was guilty of contributory negligence, and there could be no recovery from defendant for his death either under the common law or the provisions of Safety Appliance Act March 2, 1893, c. 196, §§ 2, 8, 27 Stat. 531, 532 (U. S. Comp. St. 1901, pp. 3174, 3176), which makes it unlawful for any railroad company to use in interstate commerce any cars not equipped with couplers coupling automatically as therein prescribed.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 240.*]

Grosscup, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Illinois.

Action by Alice M. Gordon, administratrix of the estate of Edwin J. Hair, deceased, against the Toledo, St. Louis & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles A. Schnetteau, for plaintiff in error.

Henry A. Neal, for defendant in error.

Before GROSSCUP and BAKER, Circuit Judges, and ANDERSON, District Judge.

ANDERSON, District Judge. Defendant in error's decedent, Edwin J. Hair, was a brakeman in the employ of plaintiff in error, and on the night of August 16, 1907, was engaged in the performance of his duties on one of the freight trains of plaintiff in error. The train was on its way west to East St. Louis, Ill. The train crew consisted of an engineer, a fireman, a conductor, a rear brakeman, and the decedent, who was the front brakeman. When the train was proceeding west of Bayle, in Illinois, it broke in two at a point 7 or 8 cars from the engine and about 45 cars from the rear end of the train. The coupling was of the automatic variety, but was defective, in that it would not hold under the strain of pulling the train. It would apparently couple all right when the cars were brought together, but would not hold. When the train first broke in two at a point west of Bayle the conductor and both brakemen were at the place where it broke, and the three were there when it was recoupled. After the train was thus coupled up, having lost too much time to allow of it reaching the next station in time to permit it to pass a train coming east, the train crew proceeded to back their train into the switch at Bayle. The conductor went back to the rear of the train to open the switch, the rear brakeman also went to the rear, and the decedent remained at the forward part of the train. While matters stood thus, the coupling again failed to hold, and the decedent went to the point where the train came apart and gave the engineer several signals to slack ahead and slack back, supposedly in an attempt to effect a coupling that would hold. At length the decedent appeared as if coming out from between the cars and gave the engineer a quick signal to come back. The cars were then 18 inches or 2 feet apart. The engineer pulled the throttle and brought the engine back. After the train came together, the engineer, receiving no further signals, and not being able to see decedent's lantern, went back to where decedent was and found him standing between the drawbars, "one in front of him and one in the back," as described in the evidence. He was caught in the lower part of the abdomen. The engineer then went to his engine, pulled the cars apart, and decedent fell to the ground and in a few minutes died.

The foregoing are the undisputed facts as shown by the evidence. The only witnesses to the circumstances of the accident were the members of the train crew, and there is no contradiction between any of them upon any point.

At the close of all the evidence plaintiff in error moved the court for an instruction to the jury to find the defendant not guilty. This motion was overruled, and an exception reserved, and this ruling is assigned as error.

As appears from the above statement of facts, after signaling the engineer to slack forward and backward several times in an attempt to effect a coupling, the decedent, while the drawbars were 18 inches

or 2 feet apart, gave a quick signal to back, which the engineer instantly obeyed, but not before decedent had placed himself between the drawbars. We can conceive of but three possible explanations for decedent's conduct: First, he may have deliberately placed himself in the position in which he was killed. This would be suicide and is not to be presumed. The presumptions are against it. Second, he may have attempted to pass to the other side of the drawbars after giving the signal to back, and thus got caught. The closeness of the drawbars together when the signal was given and his position when found might indicate an effort to pass through sidewise. Or, third, he may have given the wrong signal; that is, he may have intended to give the signal to pull forward, may have thought he had done so, and then gone in to examine the coupling further. If the accident happened in any one of these ways, there can be no recovery. Indeed, upon any possible view of the case made by the evidence the decedent was guilty of negligence which contributed to his own injury and death.

One count of the declaration averred that the car was being used in interstate commerce and was not equipped with couplers as required by the safety appliance act. But, whether the case be considered from the view point of the act of Congress (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) or the local law, contributory negligence is a complete defense. Denver & Rio Grande Railroad Co. v. Arrighi, 129 Fed. 347, 63 C. C. A. 649.

Plaintiff in error's motion for a directed verdict should have been sustained.

The judgment of the circuit court is reversed, and the cause remanded for a new trial.

GROSSCUP, Circuit Judge (dissenting). The Supreme Court in St. Louis, Iron Mountain & Southern Ry. Co. v. May Taylor, Administratrix, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, passing upon the Safety Appliance Act here involved, says:

"In the case before us the liability of the defendant does not grow out of the common law duty of master to servant. The Congress, not satisfied with the common law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it."

This makes the case before us one, not of qualified duty on the part of plaintiff in error, but of absolute duty; for that the cars were not equipped with the safety appliances prescribed by the Act, is an undisputed fact.

The majority opinion accounts for the accident in three possible ways:

"First, he may have deliberately placed himself in the position in which he was killed. This would be suicide and is not to be presumed. The presumptions are against it. Second, he may have attempted to pass to the other side of the drawbars after giving the signal to back, and thus got caught. The closeness of the drawbars together when the signal was given and his position when found might indicate an effort to pass through sidewise. Or, third, he may have given the wrong signal; that is, he may have intended to give the signal to pull forward, may have thought he had done so" (the engineer interpreting it to be a signal backward) "and then gone in to examine the coupling further."

The decedent's experience in railroading had not extended beyond thirty days. He was only twenty-one years of age. Now, accepting the immediate cause of the decedent's going between the cars as the third supposition stated—that his signal to the engineer, interpreted by the engineer to go back was in fact meant by him to go forwards— we have a case, not of contributory negligence, but of confusion of signals, due to the inexperience or ignorance of the decedent as a railway brakeman. Does the mistake of the decedent, due to inexperience or ignorance, exempt the railroad company from the consequences of having failed in its absolute duty of equipping the cars with safety devices, in a case where, had there been compliance with the law, the confusion and mistake would not have occurred?

I think not. In my judgment, the conclusion arrived at in the majority opinion is contrary to what Congress, in the Safety Appliance Act, intended should be a comprehensive safety precaution for all the operatives of the road—the inexperienced as well as the experienced— and contrary, to what the Supreme Court intended to lay down in the Taylor Case, above quoted. It is my judgment that Congress intended by this Act to provide, among other things, against just such occasions for confusion as the one here disclosed, by doing away with all occasion for anyone going between the cars for the purpose of coupling; for unless this is true, what we have been calling an absolute duty is, after all, only a qualified duty; and the Safety Appliance Act, instead of being for the protection of all, and against every kind of honest mistake, is not for the protection of the inexperienced against mistakes and confusion that grow out of inexperience.