## HAMPTON v. DES MOINES & CENT. I. R. CO.

### No. 9693.

Circuit Court of Appeals, Eighth Circuit. June 15, 1933.

Ernest A. Michel, of Minneapolis, Minn. (James E. O'Brien, Tom Davis, and Carl L. Yaeger, all of Minneapolis, Minn., on the brief), for appellant.

A. B. Howland, of Des Moines, Iowa (Corwin R. Bennett, of Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

The parties will be referred to as in the court below, the appellant as plaintiff, the appellee as defendant. From a judgment in favor of the defendant entered upon a verdict directed by the court at the close of the plaintiff's case in an action to recover for personal injuries, this appeal is taken. It is undisputed that the plaintiff was an employee of the defendant and that, while engaged as a brakeman in coupling an engine to a car in the defendant's yards at Des Moines, Iowa, about noon on July 25, 1932, his left foot was so crushed between the couplers that it had to be amputated. He claims that his injuries were due to a defective coupler on the engine, and bases his right to recover upon this alleged violation of the Safety Appliance Act, title 45, U. S. C., § 2 (45 USCA § 2). The defendant denies any violation of the act and asserts that the plaintiff was guilty of contributory negligence.

It is conceded that the defendant is a common carrier engaged both in interstate and intrastate commerce, and is therefore subject to the Safety Appliance Act (45 USCA § 1 et seq.), and it is further conceded that, since the plaintiff was not engaged in interstate commerce at the time the accident occurred, contributory negligence is a complete defense.

There are but two questions submitted for our determination:

(1) At the close of the plaintiff's case, was there sufficient evidence of a violation by the defendant of the Safety Appliance Act to take that question to the jury?

(2) Did the plaintiff's evidence establish his contributory negligence as a matter of law?

It is elementary that upon the consideration of the ruling of the lower court granting the motion of the defendant for a directed verdict the plaintiff is entitled to have his evidence viewed in its most favorable aspect. Keeping that in mind, the facts which it tended to establish were substantially as follows: The plaintiff had been employed by the defendant for some eighteen years, was an experienced brakeman, and had coupled and uncoupled thousands of cars. On the day of the accident he was head brakeman "following the engine." On a stretch of straight track was a freight car to which it intended to couple the engine. The engine was approaching the car from a point some three hundred feet away; the plaintiff was on the front footboard of the engine on the right-hand side facing the car and directing the movement of the engine. As it neared the car, he gave a "slow" signal, which was obeyed by the engineer, and the engine then proceeded at a speed of four or five miles an hour. When it was within two or three feet of the car, the plaintiff noticed that the drawbar of the engine was four or five inches out of line laterally toward him. He knew that in that position the coupling would not "make". In order to align the drawbar, he placed his left foot upon it "back in behind the knuckle on the big end" of the drawbar and shoved. It did not give at first. He shoved again. It moved suddenly into position; his foot slipped, passed in front of the knuckle, and was caught between the couplers as the coupling was made. He then pulled the pin and signalled the engineer to go ahead, and thus released his foot. He had been working on the engine since about 5:30 in the morning, and had not had any difficulty with the drawbar before, although he had used it both in coupling and uncoupling. Drawbars necessarily have some lateral play, and the customary play of an inch or a little more does not interfere with their coupling upon impact. A drawbar which is four or five inches out of line will not couple upon impact, but must be aligned before a coupling can be made. The alignment of such drawbars by brakemen is ordinarily accomplished by the method employed by the plaintiff. In order to make the adjustment of such drawbars, it is necessary for the brakemen to go between the ends of the cars.

The Safety Appliance Act, title 45, U. S. C., § 2 (45 USCA § 2), requires couplers coupling automatically by impact and which can be coupled and uncoupled without the necessity of men going between the ends of the cars. Johnson v. Southern Pacific Co., 196 U. S. 1, 25 S. Ct. 158, 49 L. Ed. 363; San Antonio & A. P. Ry. Co. v. Wagner, 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110.

If the drawbar in question here was four or five inches out of line, as testified to by the plaintiff, so that he was required to move it four or five inches from its original position in order to make the coupling, it was not such a coupler as the law required. Delk v. St. Louis & San Francisco R. R. Co., 220 U. S. 580, 584, 585, 31 S. Ct. 617, 55 L. Ed. 590; San Antonio & A. P. Ry. Co. v. Wagner, supra, 241 U. S. 483, 484, 36 S. Ct. 626, 60 L. Ed. 1110; Atlantic City R. Co. v. Parker, 242 U. S. 56, 37 S. Ct. 69, 61 L. Ed. 150. The fact that the coupling was made after the plaintiff aligned the drawbar does not disprove his statement that it would not have been made by impact had he not aligned it.

We think that the testimony of the plaintiff and the testimony of his expert that a drawbar four or five inches out of line laterally will not couple upon impact constituted substantial evidence that the coupler was defective, and made that question one of fact for the jury.

On the question of contributory negligence, the defendant contends that, when the plaintiff observed that the drawbar was out of alignment, he had a safe course which he might have pursued; he could have signalled the engineer to stop, and then have made the adjustment; instead, he chose the more dangerous course of attempting to align the drawbar with his foot. The plaintiff, on the other hand, argues that he was faced with an emergency; that it was too late to signal the engineer; that damage to the equipment would have resulted if the drawbar had remained in its original position; and that what he did was the customary and usual thing to do under the circumstances.

█ Ordinarily, the question of negligence or contributory negligence is not one of law for the court, but one of fact for the jury. Where there is uncertainty as to the existence of negligence or contributory negligence—whether such uncertainty arises from a conflict of testimony or because, the facts being undisputed, fair-minded men might honestly draw different conclusions—the question is a question of fact. It is only where the inference of contributory negligence is so plain that all fair-minded men will be compelled to that conclusion upon a consideration of the facts that the court is justified in determining its existence as a matter of law. Texas & Pacific Ry. Co. v. Harvey, 228 U. S. 319, 324, 325, 33 S. Ct. 518, 57 L. Ed. 852; Delk v. St. Louis & San Francisco R. R. Co., supra, 220 U. S. 580, 587, 31 S. Ct. 617, 55 L. Ed. 590; Glynn v. Krippner (C. C. A. 8) 60 F.(2d) 406, 407.

The situation presented in this case is similar to that which was discussed by the Supreme Court in Chicago, R. I. & P. Ry. Co. v. Brown, 229 U. S. 317, 33 S. Ct. 840, 57 L. Ed. 1204. It was claimed in that case that the injured man, with two safe courses before him, chose a dangerous one. The court said (page 321 of 229 U. S., 33 S. Ct. 840, 841, 57 L. Ed. 1204): "The railway company starts its contentions with a concession of its own culpability in sending Brown to his duty to encounter defective appliances, and then seeks to relieve itself from liability by a charge against him of a careless judgment in its execution. But some judgment was necessary, and whether he should have selected one of the ways which counsel point out admits of debate. It is one thing to judge of a situation in cold abstraction; another thing to form a judgment on the spot. The Germanic (Oceanic Steam Nav. Co. v. Aitken), 196 U. S. 589, 595, 596, 25 S. Ct. 317, 49 L. Ed. 610, 613, 614. The movement of trains requires prompt action, and we cannot hold that, as a matter of law, Brown, in leaning forward to remove a pin which would have yielded to his effort, was guilty of negligence because he did not anticipate that his foot might slip and be caught in an open frog rail of which he had or could be charged with knowledge."

█ It may be that it is an inherently dangerous thing for a brakeman, in order to align the coupler, to place his foot on the drawbar of an engine behind the knuckle when about to couple onto a car, and that it is so probable that his foot will slip and be crushed in making the coupling that he should anticipate that result; but there is no evidence in the record to that effect, and, if it is a fact, it is not a matter of such common knowledge that we would be justified in taking judicial notice of it. From all that appears in the record, the plaintiff, when he placed his foot behind the knuckle of the drawbar, had no reason to anticipate that his foot would slip and be caught between the couplers. The situation would be different if the evidence showed that, instead of attempting to align the drawbar by placing his foot back of the knuckle, he had attempted to align it by placing his foot in a position where it would be certain to be crushed if he did not withdraw it in time.

We have examined the cases upon which the defendant relies, namely: Schlemmer v. Buffalo, Rochester & Pittsburgh Ry. Co., 220 U. S. 590, 31 S. Ct. 561, 55 L. Ed. 596; Denver & Rio Grande R. Co. v. Arrighi (C. C. A. 8) 129 F. 347; Gilbert v. Burlington, Cedar Rapids & Northern Ry. Co. (C. C. A. 8) 128 F. 529; Toledo, St. Louis & Western R. Co. v. Gordon (C. C. A. 7) 177 F. 152. While the correctness of the decision of this court in the case of Gilbert v. Burlington, Cedar Rapids & Northern R. Co. may be somewhat doubted in view of the decision of the Supreme Court in Chicago, R. I. & Pac. Ry. Co. v. Brown, supra, these cases we think would be controlling if the evidence had disclosed that the defendant had deliberately placed his foot between the couplers in an effort to align the drawbars. In the Schlemmer Case the plaintiff was warned not to attempt to make the coupling which resulted in his

death, and the hazard which he faced was obvious to him. In the Arrighi Case a brakeman, in attempting to make a coupling, placed his fingers between the drawbars and did not withdraw them. In the Gordon Case a brakeman who had given a "back-up" signal for the purpose of making a coupling was crushed between the drawheads; he had either carelessly or deliberately placed himself between them. In the Gilbert Case a brakeman, after attempting to use a lever on one side of a moving freight car for the purpose of uncoupling, had, instead of trying to use the lever on the other side of the car, gone between the cars to pull the pin and had caught his foot in an unblocked guard rail. In each of these cases the court was of the opinion that only one conclusion could be reached from the evidence, and that was that the injured man had unnecessarily adopted a course of action the dangers of which were apparent and the results of which were to be expected, and he had therefore caused or contributed to his own injury or death.

Our conclusion is that, under the plaintiff's evidence in this case, the questions of the liability of the defendant and of the contributory negligence of the plaintiff were questions of fact and not of law.

The judgment is reversed, and the case remanded for a new trial.