SCHAAF v CHESAPEAKE & OHIO RAILWAY COMPANY

Docket No. 52284. Submitted November 4, 1981, at Lansing.—Decided February 19, 1982. Leave to appeal applied for.

Charles Schaaf, a yard conductor for the Chesapeake & Ohio Railway Company, was injured while trying to manually align a drawbar on a boxcar so that the car could be coupled to another car. Schaaf filed suit against C & O in Genesee Circuit Court, maintaining that the defendant was strictly liable for his injuries because it had violated the automatic coupling provisions of the Federal Safety Appliance Act. The jury returned a verdict of no cause of action in favor of defendant and judgment was entered, Donald F. Freeman, J. Plaintiff's motion for a new trial was denied. Plaintiff appeals. *Held:*

The trial court erred in instructing the jury that the railroad car drawbars had to be aligned before a violation of the Safety Appliance Act could occur through failure of the railroad cars to automatically couple upon impact. The verdict of no cause of action is vacated and this cause is remanded for a new trial.

Reversed and remanded.

RAILROADS — FEDERAL SAFETY APPLIANCE ACT — ALIGNMENT OF DRAWBARS — JURY INSTRUCTIONS.

It was error for a trial court to instruct the jury in a case involving the Federal Employers' Liability Act and the Federal Safety Appliance Act that railroad car drawbars had to be aligned before a violation of the Safety Appliance Act could occur through failure of the railroad cars to automatically couple upon impact (45 USC 51; 45 USC 2).

*Otis, Peters, Becker & Pietsch, P.C.* (by *Sheldon Otis* and *Mark Granzotto),* for plaintiff.

*Smith & Brooker, P.C.* (by *A. T. Lippert, Jr.,* and *Mona C. Doyle),* for defendant.

REFERENCE FOR POINTS IN HEADNOTE
65 Am Jur 2d, Railroads § 635.

Before: BRONSON, P.J., and T. M. BURNS and J. T. CORDEN,* JJ.

PER CURIAM. Plaintiff appeals as of right an April 11, 1980, jury verdict of no cause of action in this case brought under the Federal Employers' Liability Act, 45 USC 51, and the Federal Safety Appliance Act, 45 USC 2. We reverse.

Plaintiff was employed as a yard conductor for the defendant railway company. This position required him to couple and uncouple boxcars. On October 25, 1976, plaintiff was instructed to couple an engine and two cabooses with another series of railroad cars.

Railroad cars will not couple unless their drawbars are properly aligned and at least one knuckle on the end of a drawbar is open. A drawbar can be adjusted into alignment manually by pushing or pulling on the bar from the end of the railroad car.

On the date in question plaintiff initially was unable to couple the series of railroad cars with the engine and caboose because the drawbars were not aligned. Plaintiff signaled the engineer to pull the engine and cabooses away from the other cars and then went between the cars and attempted to move one of the drawbars into alignment. He was in the process of shoving on the bar when he felt his back snap and he suffered severe injury.

In October, 1978, plaintiff filed suit. He maintained that the railroad was strictly liable for his injuries because it had violated the automatic coupling provisions of the Safety Appliance Act, 45 USC 2. That act provides:

"It shall be unlawful for any common carrier engaged

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Plaintiff argued at trial that the failure of the railroad cars to couple upon impact was a per se violation of the Safety Appliance Act and that the jury should be so instructed. Defendant countered that the jury should be instructed that no violation of this act could be found unless both drawbars were properly aligned before the attempt at coupling took place. After listening to extensive argument by the parties, the trial judge adopted defendant's argument and instructed the jury accordingly:

"Now, let's talk about what the real duty is with respect to the railroad and automatic couplers, and I ask you to pay particular attention to this:

"To comply with the law just stated, a coupler must be one which operated in the manner intended, performs its function in all the ordinary conditions under which couplings or uncouplings are made, second, the duty of the defendant was to equip the car in question with a coupler which when operated in the manner intended would work efficiently by raising the coupling lever. If you should find—this is 3—if you should find the plaintiff in the performance of his duties aligned the drawbar and the knuckle or knuckles were in the proper position for coupling and that the coupler failed to function properly thereafter, then you must find a violation of the Federal Appliance Safety Act.

"The mere failure of cars to couple automatically on impact is not sufficient to constitute a violation of the Safety Appliance Act, unless you find that such failure, if any, occurred after the coupler had been properly set and aligned for coupling and the cars were handled in the proper manner for impact coupling.

"I'm going to read that again to you. The mere failure of cars to couple automatically on impact is not sufficient to constitute a violation of the Safety Appliance Act unless you find that such failure, if any, occurred after the coupler had been properly set and aligned for coupling and that the cars were handled in the proper manner for impact coupling."

The jury returned a verdict in favor of defendant. Plaintiff's motion for a new trial was denied and now plaintiff appeals.

The single issue raised in this appeal was whether the trial judge erred in instructing the jury that the railroad car drawbars had to be aligned before a violation of the Safety Appliance Act could occur through failure of the railroad cars to automatically couple upon impact.

Although no Michigan appellate court has yet addressed this issue, every other appellate court presented with this question has ruled that a misaligned drawbar is in itself enough to constitute a violation of the Safety Appliance Act. In *Kansas City Southern R Co v Cagle*, 229 F2d 12, 14 (CA 10, 1955), the Federal Court of Appeals addressed a factual situation substantially similar to that at bar. There, an out-of-alignment drawbar was in such a condition that it would not automatically couple to railroad cars upon impact. As a result, it was necessary for an employee of the railroad to manually align the drawbar so that the coupling could be made. While doing so, an employee was injured. The Federal Court of Appeals held:

"Without exception the cases have held that operating a car on which the drawbar is so far out of line as to prevent automatic coupling violates the [Safety Appliance] Act and imposes absolute liability." (Footnote omitted.)

See also *Metcalfe v Atchison, T & S F R Co,* 491
F2d 892, 896-897 (CA 10, 1974) (citing cases), *Hal-
landa v Great Northern R Co,* 244 Minn 81, 88-90;
69 NW2d 673 (1955) (holding that it is no defense
in an action brought under the Safety Appliance
Act if the failure of drawbars to couple upon
impact was caused by misalignment), *Donnelly v
Pennsylvania R Co,* 342 Ill App 556; 97 NE2d 846
(1951).

We find these cases to be persuasive. Defendant
fails to cite, and our research has not discovered,
any case holding that drawbars must be properly
aligned before a railroad can be found guilty of a
violation of the Safety Appliance Act. The case of
*Affolder v New York, C & S L R Co,* 339 US 96; 70
S Ct 509; 94 L Ed 683 (1950), is distinguishable
because that case involved the failure of two cars
to couple on impact because a coupler had not
been properly opened. There is a crucial distinc-
tion between a coupler and a drawbar. A coupler
can be opened and closed without the necessity of
having someone go between any railroad cars. A
drawbar, however, can only be aligned manually
by someone pushing it while standing between
railroad cars. Therefore, the trial judge's instruc-
tions to the jury were in error. The April 11, 1980,
jury verdict of no cause of action in defendant's
favor is vacated and this cause is remanded for a
new trial.

Reversed and remanded.