**John CLARK, Plaintiff-Appellant,**

v.

**KENTUCKY AND INDIANA TERMINAL RAILROAD, Defendant-Appellee.**

No. 81–5804.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1982.

Decided Feb. 21, 1984.

Rehearing and Rehearing En Banc Denied April 9, 1984.

John T. Papa, Lead Counsel, argued, Callis & Hartman, Granite City, Ill., Edwin I. Baer, Louisville, Ky., for plaintiff-appellant.

Gerald Kirven, argued, Baird, Kirven, Westfall & Talbot, Louisville, Ky., for defendant-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.[*]

FAIRCHILD, Senior Circuit Judge.

This is an appeal from judgment notwithstanding the verdict for defendant Kentucky and Indiana Terminal Railroad ("K & I") on the issue of liability for personal injuries to an employee under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (1976), predicated upon a statutory violation of the Federal Safety Appliance Act of 1893 ("FSAA"), 45 U.S.C. §§ 1–7 (1976). The jury returned a verdict finding that plaintiff John Clark was injured as a result of K & I's operation of a

---

[*] The Honorable Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

railroad car equipped with a coupler violating § 2 of the FSAA, 45 U.S.C. § 2 (1976). The district court held that the record did not support the jury's finding. We reverse the court's judgment and remand for reinstatement of the jury verdict for plaintiff.

## I.

The parties to this appeal are in agreement about the essential facts presented to the jury. On the day of Clark's injury, November 1, 1978, plaintiff was working as a switchman helper at K & I's Magnolia train yard in Louisville, Kentucky. On orders from his foreman, Clark and an engineer proceeded to a spur track to remove a cut of five or six cars. With Clark directing from the side steps of the engine, the engineer backed into the track and coupled with the lead car. As the engine began to pull away, Clark noticed that the last car in the cut had been left behind and signaled for a stop. On closer inspection Clark saw that the trailing coupler on the second to last car in the cut, car number 17208, had a closed knuckle and was skewed six to eight inches off-center. Clark pulled the pin holding the knuckle closed, stepped between the cars and attempted to center the coupler. When this attempt met with resistance, Clark braced himself against the track, straining to force the coupler into place. It was then Clark felt a numbing pain in his right side that was later diagnosed a hernia. Despite the pain, Clark finished centering the coupler, stepped out from between the cars and signaled the engineer to back up. On this backing the last car was successfully coupled to the remainder of the cut.

On receiving a report of an accident, a K & I car inspector and K & I's general car foreman examined the couplers on car 17208. They found defects in the coupler Clark had struggled to align but concluded these defects would not have hindered the coupler arm's movement from side to side.

The general car foreman's inspection report, which the car inspectors also signed, indicated that the coupler's lock lift and knuckle locks "were worn out and would not let knuckle lock properly. These parts were replaced . . . and knuckle locked and opened properly." (Transcript ("TR") 159) Both the inspector and foreman found, as had Clark, that the metal was rubbed raw where the coupler arm rides on the coupler housing. They indicated that this wear was a natural product of the friction produced by the arm's movement and that the arm moved freely when the foreman put his back up against it and pushed.

At the end of the presentation of evidence, a dispute arose over what instructions should be submitted to the jury. K & I counsel did not challenge submission of a general negligence instruction pursuant to FELA, see 45 U.S.C. § 51 (1976), on a theory that the railroad should have maintained more easily movable coupler arms, but did object to submission of an instruction based on statutory liability under § 2 of the FSAA. The district court listened to argument and advised plaintiff's counsel that Clark would "have trouble keeping" a verdict under the FSAA instruction, but that the court would submit both the general negligence and statutory liability questions to the jury. (Tr. 187)

The jury found K & I in violation of § 2 of the FSAA and awarded Clark $35,000 in damages. The court had instructed that the jury not go on to consider the question of general negligence under FELA which would have included consideration of plaintiff's possible contributory negligence.[1] See 45 U.S.C. § 53 (1976). The district court entered judgment notwithstanding the verdict for K & I.

## II.

The FELA claim on which the jury passed rests on the narrow question of K & I's liability for injuries suffered by Clark

---

1. A better practice, at least in light of the court's expressed doubts about Clark's ability to sustain a verdict under the FSAA, would have been to permit the jury to answer questions under the general negligence theory as well. In this way it is conceivable any dispute over the FSAA claim would have been mooted.

because of an alleged violation of the FSAA. *See Crane v. Cedar Rapids & I.C.R. Co.,* 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969). Proof of a violation of the FSAA is sufficient to trigger statutorily imposed absolute liability for resulting injuries. "[A] failure of equipment to perform as required by the [FSAA] is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability—a liability that cannot be escaped by proof of care or diligence." *O'Donnell v. Elgin, J. & E.R. Co.,* 338 U.S. 384, 390, 70 S.Ct. 200, 204, 94 L.Ed. 187 (1949).

■ Section 2 of the FSAA provides:

Automatic couplers

It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

45 U.S.C. § 2 (1976). A plaintiff makes a sufficient showing of a violation of § 2 by establishing that train couplers failed to couple automatically on the single impact in question; *Carter v. Atlanta & St. A.B.R. Co.,* 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949); *Phillips v. Chesapeake and Ohio Railway Company,* 475 F.2d 22, 25 (4th Cir.1973); or by establishing that cars failed to remain coupled until purposely released once a coupling was effected. *O'Donnell,* 338 U.S. at 389, 70 S.Ct. at 203. If any probative evidence supports finding either of these violations of § 2, a jury verdict of absolute statutory liability is supportable and the railroad is responsible for resulting injuries.

In a brief memorandum granting judgment notwithstanding the verdict, the district court acknowledged that "[o]nce the violation of [Section 2] is established the only burden plaintiff carries is to establish causation," but concluded that Clark "has not met the threshold burden of showing that the [couplers] did not couple on im-

pact." K & I similarly urges on appeal that the only evidence of an impact between the last car and car number 17208 was on the second backing, and that this impact resulted in a successful couple.

In ruling on a motion to enter judgment notwithstanding the verdict, "the trial court must view the evidence in a light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in its favor." *National Polymer Products v. Borg-Warner Corp.,* 660 F.2d 171, 178 (6th Cir.1981). "[T]he trial court may neither weigh the evidence, pass on credibility of witnesses nor substitute its judgment for that of the jury." *Id.* "When reviewing the trial court's decision, an appellate court is bound by the same standard." *Id.*

■ The deference given the jury's interpretation of the facts is even greater in FELA cases. "Only when there is a complete absence of probative facts to support the [finding of employer negligence under FELA] does a reversible error appear." *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). *See also Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 360 (5th Cir.1980); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2526 (1971 ed.).

■ The evidence indicates that Clark and the engineer intended to back up and take the full cut of cars out of the spur track. Only after Clark noticed that the last car in the cut was left behind did they realize that not all the cars were coupled. From these facts the jury could have inferred that an impact was intended and occurred between any uncoupled cars in the cut on the first backing but that the couplers failed to perform automatically between the last two cars. In this event, the failure of the couplers resulted in Clark returning to the uncoupled cars, finding a misaligned coupler with a closed knuckle, and stepping between the cars where he was injured.

This circuit has previously indicated that failure of an engine to bring out a full cut

of cars after its first backing would permit the inference that an impact occurred between all the cars but the coupler did not automatically couple. *See Cobb v. Union Railway Company,* 318 F.2d 33, 36 (6th Cir. 1963).

K & I argues that even if the jury might reasonably have found a failure of the couplers to couple on the first backing, a violation of § 2 could still only be found if the plaintiff proves that the couplers were properly set to couple. In *Affolder v. N.Y., C. & St. L.R. Co.,* 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950), the Supreme Court held a failure of cars to couple automatically is a violation of § 2 assuming "the coupler was placed in a position to operate on impact." *Id.* at 99, 70 S.Ct. at 510. In *Cobb,* this Circuit approved a jury instruction charging "that if couplers fail to couple automatically because they are not properly set for coupling under the circumstances, this failure of the cars to couple is not a violation of the [FSAA], but if they fail to couple automatically by impact for any other reason, then there would be a violation of the [FSAA]." 318 F.2d at 35–36.

K & I reads *Affolder* and *Cobb* to hold that no violation of § 2 can be found unless the couplers were aligned and at least one knuckle open before the failed impact. Assuming this is a proper reading of those cases, the jury was permitted to find that the couplers were properly set on this record.

The absence of direct evidence of the position of the couplers prior to impact does not prevent a jury from finding a violation of § 2. In *Cobb,* we explained that the jury "could not find a violation of the [FSAA] if the couplers failed to automatically couple if they were not properly set, but ... if the couplers failed to couple automatically upon impact the jury could infer from that fact, but they were not required to infer, that the failure was under circumstances constituting a violation of the [FSAA]." 318 F.2d at 37. We do not

fault the jury for making such an inference here. On the contrary, other evidence presented at trial supports the inference. There was testimony that it was the practice of carmen to walk the railyard visibly inspecting the condition of cars, and that when a misaligned coupler was observed it was customary to put them in position to couple. While both the K & I inspectors indicated that misaligned couplers may be found in the yard, the jury may have concluded that the couplers were more likely than not to have been properly aligned.

There was also evidence to suggest that the failure of the couplers to couple on their first impact, or to remain coupled, may have been due to factors other than the position of the couplers. K & I's own inspection disclosed that the car 17208 had a defective knuckle which would not lock properly. The evidence also suggested the coupler on 17208 was old and worn. The jury might have inferred from these facts that the coupler failed to lock on the engines first backing even though properly set.

K & I contends that no reading of the evidence would permit the jury to find that the couplers were properly set on any impact prior to the time Clark had opened the knuckle and aligned the coupler on car 17208. Indeed, K & I argues that the fact that Clark found the knuckle closed and coupler misaligned compelled the jury to reach a contrary inference: that the couplers were not properly set before the first impact. We cannot agree.

The closed knuckle on car 17208 tells little about the position of that knuckle *before* impact and nothing about the position of the knuckle on the last car in the cut. It is possible, indeed likely, that if the cars failed to couple due to other factors, the collision would have closed the knuckle on car 17208. Even assuming the knuckle on car 17208 was closed prior to impact, no evidence compelled the jury to find that the other car's coupler was also closed.[2]

---

2. K & I argues that Clark, being an experienced railroad worker, would not have bothered to open the knuckle on car 17208 unless the other

coupler was closed since only one knuckle need be open for a successful coupling. We do not find this reasoning so compelling that the jury

Nor does the fact that the coupler was misaligned *after* impact require the inference that the coupler was not aligned *before* impact. The jury may have believed that the coupler was shoved out of alignment at impact. Under the circumstances presented, we cannot say the jury was precluded from inferring that the failure of the last two cars to couple was due to factors other than a failure of the couplers to be properly set.

## III.

Even if K & I were correct in its assertion that insufficient evidence exists to support a jury finding of an impact, of a failure to couple or that the couplers had been properly opened and aligned prior to impact, an alternative basis exists for imposing liability on K & I pursuant to § 2.

Courts have uniformly held that a person injured as a result of aligning a coupler in order to effect a coupling of two cars is entitled to recover through § 2 of the FSAA. *See Metcalf v. Atchison, Topeka and Santa Fe Railway Co.,* 491 F.2d 892, 896–97 (10th Cir.1974), and cases cited there. *See also Schaaf v. Chesapeake & O.Ry. Co.,* 113 Mich.App. 544, 317 N.W.2d 679 (1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 153, 78 L.Ed.2d 142 (1983); *Buskirk v. Burlington Northern, Inc.,* 103 Ill.App.3d 414, 59 Ill.Dec. 125, 431 N.E.2d 410 (5th Dist.1982); *Donnelly v. Pennsylvania R. Co.,* 342 Ill.App. 556, 97 N.E.2d 846 (1st Dist.1951). While the facts of many of these § 2 cases have included proof of a failure to couple on impact before a plaintiff was injured, *see, e.g., San Antonio Ry. v. Wagner,* 241 U.S. 476, 36 S.Ct. 626, 60 L.Ed. 1110 (1916); *Atlantic City R.R. Co. v. Parker,* 242 U.S. 56, 37 S.Ct. 69, 61 L.Ed. 150 (1916), railroads have also been held responsible for injuries suffered by workers who passed between cars to correct a misaligned drawbar preparatory to coupling even though no attempt at coupling had yet been made. *See, e.g., Chicago, St.P., M. & O. Ry. Co. v. Muldowney,* 130 F.2d 971 (8th Cir.1942); *Hampton v. Des Moines & Cent.*

*I.R. Co.,* 65 F.2d 899 (8th Cir.1933). In such cases, it was enough that the worker saw the coupler sufficiently out-of-line to make coupling impossible, passed between the cars to straighten the coupler and was injured as the cars came together. *Muldowney,* 130 F.2d at 975; *Hampton,* 65 F.2d at 900–01. More recent cases have held railroads liable for injuries suffered by workers attempting to straighten misaligned couplers even though the plaintiff's injuries were not caused by the coming together of the cars but simply by the strain of aligning the coupler. *See, e.g., Kansas City Southern Railway Company v. Cagle,* 229 F.2d 12 (10th Cir.1955) (plaintiff suffered back injury in effort to align coupler); *Schaaf v. Chesapeake & O. Ry. Co.* (injury to back suffered while aligning coupler); *Buskirk v. Burlington Northern, Inc.* (injury to back). *See also Coleman v. Burlington Northern, Inc.,* 681 F.2d 542 (8th Cir.1982) (plaintiff entitled to recover for strained back suffered when coupler pin lifter failed to function properly).

K & I contends, citing *Affolder* and *Cobb,* that a misaligned coupler is no basis to impose liability under § 2. But in neither *Affolder* nor *Cobb* did the facts suggest any issue concerning alignment of the two couplers. Nor did those cases reach a determination as to whether a misaligned coupler violated § 2. *Affolder* merely held that a failure to couple due to two closed couplers was not a violation of § 2; *Cobb* adopted the *Affolder* language. Important distinctions between closed and misaligned couplers argue against the application of *Affolder* to the latter condition.

A coupler typically has a lateral play of one to one and one-half inches on either side that permits movement of coupled cars around curves. But a coupler's lateral motion may be increased by wear. *Hallada v. Great Northern Railway,* 244 Minn. 81, 69 N.W.2d 673, 680, *cert. denied,* 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955). "[T]he customary play of an inch or a little more does not interfere with ... coupling upon

was not permitted an alternative interpretation of the facts.

impact." *Hampton v. Des Moines & Cent. I.R. Co.,* 65 F.2d at 900. But "[i]f the couplers are out of alignment beyond the normal play, the coupling will not make automatically even though both knuckles are opened." *Chicago, St. P., M. & O. Ry. Co. v. Muldowney,* 130 F.2d at 974–75. In contrast, a coupler knuckle is by design either open or closed. *Hallada,* 69 N.W.2d at 680. Unlike a misalignment, the knuckle's position is not attributable to aging equipment.

As importantly, should both couplers be found in the closed position before an attempted coupling, a worker can open a knuckle by operation of the lift lever on the side of the railroad car. In order to correct a coupler so out-of-line that a successful coupling is impossible a railroad worker is required to step between the cars and make the adjustment. "In light of these differences, it is well to keep in mind that one of the basic purposes of the [FSAA] is to require the automatic coupling and uncoupling without the necessity of men going between the cars." *Hallada,* 69 N.W.2d at 680. *See also Schaaf,* 317 N.W.2d at 681.

■ Consistent with overwhelming case law, then, we hold that a person injured while attempting to align a coupler in order to effect a coupling may recover through § 2 of the FSAA.

The evidence of this case indicates that Clark found the coupler on car 17208 off-center by as much as eight inches. Clark knew that coupling would not be possible unless he stepped between the cars and aligned the coupler. Under these circumstances, a jury was permitted to find that the injuries Clark suffered aligning the coupler resulted from a violation of § 2.

■ Accordingly, we reverse and remand for reinstatement of the jury's verdict for Clark and entry of judgment thereon.[3]

**3.** In its memorandum granting judgment notwithstanding the verdict, the district court indicated some question about the possible excessiveness of the jury's award of $35,000 "for a hernia that was surgically repaired and from which plaintiff was disabled for about 6 weeks and from which he suffers no permanent disability." The court noted that the award "ex-

ceeds by $10,000 the *ad damnum* of the plaintiff's complaint and by $2,000 the amount asked by his counsel in closing argument." We do not find the award so excessive, however, in light of the pain which accompanied Clark's injury, to require adjustment. *See, e.g., Shimman v. Frank,* 625 F.2d 80, 100 (6th Cir.1980).