ADAMS, Justice.
This is an appeal by Jack D. Byrd from a judgment entered on a jury verdict in the Circuit Court of Jefferson County in favor *157 of Seaboard System Railroad, Inc. Mr. Byrd claims that he suffered an injury when he attempted to align the coupler on a railroad car after two cars had failed to couple automatically; this was an injury for which, he alleges, Seaboard was absolutely liable under provisions of the Federal Safety Appliance Act of 1883 (“FSAA”), 45 U.S.C. §§ 1-7 (1976). Sections 1-7 of the FSAA of 1883 are popularly referred to as the Automatic Coupler Act. His appeal is based on the allegation that the trial court improperly charged the jury that the plaintiff was required to show that the coupler failed to function “when operated with due care and in the normal, natural, and usual manner.” This jury charge, Byrd maintains, was prejudicial and misled the jury, to his detriment. We agree that it may have misled the jury; therefore we reverse.
The facts reveal that Byrd worked as a switchman for Seaboard System Railroad at the Tilford Railroad Yard in Atlanta, Georgia, from August 1977 through August 1982. He had previously injured his back in a similar accident in March 1978, an accident witnessed by a fellow employee. Following successful surgery, Mr. Byrd returned to work one year from the date of his injury, after having accepted a $50,-000.00 settlement from Seaboard. Testimony also showed he had been treated by a chiropractor for back pain in December 1977, prior to his first injury.
In the present case, Byrd claims to have injured his back on August 8, 1982, when he attempted to align the drawhead (coupler) between a caboose and a hopper car after the cars had failed to couple automatically upon impact. He testified that the unsuccessful attempt to couple the cars had caused the coupler on the hopper car to be knocked to one side so that it required realigning before the cars could be successfully linked. The physical strain caused by his attempted alignment of the coupler resulted in the injury to his back, Byrd contends.
After reporting his injury to the train-master, Smith, Byrd showed Smith that the carrier iron on the hopper car, the part of the car which supports the 250- to 300-pound coupler, was cracked. Smith testified that the crack in the carrier iron allowed the coupler to sag somewhat, but not so that it would interfere with the coupling of the cars. When Byrd returned to the scene of the accident with Smith, the caboose and hopper car were coupled, but neither of the other crew members in the yard remembered having coupled the cars. There were no witnesses to Byrd’s attempted coupling of the cars or to the injury he alleges occurred subsequently when he tried to align the coupler. There was no evidence presented to show whether the crack in the carrier iron existed before the attempted coupling.
At trial, the appellant alleged violations of both the Automatic Coupler Safety Appliance Act (“Automatic Coupler Act”), 45 U.S.C. § 2, and the Federal Employer’s Liability Act, 45 U.S.C. § 51. The appellant struck the negligence claim under 45 U.S.C. § 51, after he had presented his evidence, and proceeded solely on the theory that Seaboard had violated 45 U.S.C. § 2.
The focus of Byrd’s appeal of the judgment for Seaboard is the trial judge’s charge to the jury that the appellant had a duty to operate the coupler with due care. The court instructed the jury:
“Now, the Plaintiff may prove the violation by the Defendant of the couplers, the Automatic Coupler Act, in one of the following manners. Number one: Evidence may be adduced to establish some particular defect, or, number two: By showing a failure to function when operated with due care and in the normal, natural and usual manner.”
The appellee correctly points out that the trial court’s charge is taken from Alabama Pattern Jury Instructions, Civil § 17.03, at 134 (Cum.Supp.1984). We have held previously:
“Under Rule 51, ARCP, reversible error occurs only where that error is prejudicial, when the trial court’s instructions are viewed as an entity. Dumas v. Dumas Brothers Manufacturing Co., Inc., 295 Ala. 370, 330 So.2d 426; Taylor v. Owen, 294 Ala. 543, 319 So.2d 672; Ala *158 bama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251.”
Underwriters National Assurance Co. v. Posey, 333 So.2d 815, 818 (Ala.1976). After having charged the jury that “plaintiff may prove the violation by the Defendant of ... the Automatic Coupler Act ... [b]y showing a failure to function when operated with due care ...,” the trial judge read the following instructions from the Automatic Coupler Act, 45 U.S.C. § 2 and from the Code of Federal Regulations, 49 C.F.R. §§ 215.121(c)(1). Those sections provide:
“On and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which shall be uncoupled without the necessity of men going between the ends of the cars.”
45 U.S.C. § 2.
“A railroad may not place or continue in service a car, if the car has a coupler carrier that is broken.”
49 C.F.R. § 215.121(c)(1).
The court further instructed the jury:
“Now, if you find that the Plaintiff's injury resulted in whole or in part from the violation by the Defendant of the Automatic Coupler Act, or one of the regulations that I have read to you, then contributory negligence of the Plaintiff in this case shall not be a bar to recovery nor induce [sic] the amount of the Plaintiffs damages.
“Now, the duty of the carrier under the Automatic Coupler Safety Appliance Act is not based on the negligence of the carrier, but is an absolute one requiring performance of the appliance on the occasion in question.
“The fact that a coupler had functioned properly on other occasions, both before and after the occasion in question is immaterial in this case. The test is the performance of the appliance on the occasion in question.”
Mr. Byrd testified that before he attempted to couple the cars, he opened the knuckle on the hopper car by pulling the “lift lever.” He testified that after the attempted coupling of the cars, he noticed that the knuckles on both cars were closed. To open a knuckle, the switchman operates the “lift” or “cut” lever on the side of the railroad car and does not have to go between the cars. In fact, the purpose of the Automatic Coupler Act is to eliminate the need for an employee to go between the railroad cars to effect a coupling. To achieve a coupling of two cars, the switch-man must open the knuckle on at least one of the cars by operating the lift lever as Mr. Byrd testified he did. The law is clear that if two cars fail to couple on impact because the knuckles of the couplers on both cars are closed, there is no violation of 45 U.S.C. § 2. See Affolder v. New York, C. & St. L. R.R., 339 U.S. 96, 100, 70 S.Ct. 509, 511, 94 L.Ed. 683 (1950).
In the present case, however, Byrd claims to have been injured when he attempted to straighten a misaligned coupler. In Clark v. Kentucky & Indiana Term. R.R., 728 F.2d 307 (6th Cir.1984), the court said, “Important distinctions between closed and misaligned couplers argue against the application of Affolder to the latter condition.” In denying Byrd's requested charge — that the railroad was “liable as a matter of law for injuries caused by a failure of a coupler to couple automatically upon impact due to a misalignment of the coupler” — the court said:
"Now, I realize we are talking about a misalignment of the drawheads in this case, and I’m going to quote from the Cobb [Cobb v. Union Railway, 318 F.2d 33 (6th Cir.1963)] case at page 37. It says: ‘It is to be noted that the District Judge properly charged [told] the jury that they could not find in [a] violation of an act if the couplers failed to automatically couple if they are not properly set.’ ”
The implication is that Mr. Byrd had a duty to align the couplers (drawheads); otherwise, a failure of the cars to couple automatically upon impact would not constitute a violation of 45 U.S.C. § 2. Neither Af- *159 folder nor Cobb dealt with the issue of misaligned drawheads or couplers. Cobb adopted the holding in Affolder that there is no violation of 42 U.S.C. § 2 if the cars fail to couple when the couplers on both cars are closed. See Affolder, supra. Cobb is not applicable to the facts of the present case. Here, the court appears to have concluded that the reference in Cobb to setting the couplers was a reference to aligning the couplers. In fact, alignment of the coupler is not a condition precedent to the occurrence of a violation of the Automatic Coupler Act.
Assuming, arguendo, that the jury did not believe that Byrd had properly operated the lift lever and opened the knuckle on the coupler of the hopper car before attempting the coupling, Byrd would still have been entitled to prevail if the jury concluded that he strained his back, as alleged, in an attempt to align the coupler. See Metcalfe v. Atchison, T. & Santa Fe Ry., 491 F.2d 892, 896-97 (10th Cir.1974); Clark v. Kentucky & Indiana Term. R.R., supra, at 312. A person injured in an attempt to align a coupler is entitled to recover under 45 U.S.C. § 2, whether or not the resulting injury was caused by the coming together of the railroad cars. See Kansas City Southern Ry. v. Cagle, 229 F.2d 12 (10th Cir.1955); Schaaf v. Chesapeake & O. Ry., 113 Mich.App. 544, 317 N.W.2d 679 (1982), cert. denied, 464 U.S. 848, 104 S.Ct. 153, 78 L.Ed.2d 142 (1983); Coleman v. Burlington Northern, Inc., 681 F.2d 542 (8th Cir.1982); Clark v. Kentucky & Indiana Term. R.R., supra.
The court charged the jury that Seaboard’s duty was absolute, not based upon its negligence, and that if a violation of the Act was found, the contributory negligence of Byrd would not bar his recovery. In view of the previous charge, which placed the burden on the plaintiff to prove the existence of a particular defect or to prove that he had exercised due care, the instruction as to the absolute liability of the defendant was misleading. Byrd asked the court to instruct the jury (1) that the liability of the defendant could be shown by “failure of the cars to couple automatically upon impact without showing a specific defect in the coupling device of one of the railroad cars”; and (2) that the railroad “was liable as a matter of law for injuries caused by a failure of a coupler to couple automatically upon impact due to the misalignment of the coupler” (plaintiff’s proposed jury charges No. 5 and No. 7, respectively).
Nowhere was the jury told that an injury sustained in an attempt to align the coupler of a railroad car, in itself, entitled the appellant to recover under 45 U.S.C. § 2. Instead, the court told the jury that a violation could be shown if the appellant proved a particular defect or “failure to function when operated with due care and in the normal, natural and usual manner.” The charge is unclear as to what duty, if any, he was required to perform with due care. It is enough to require reversal that the jury could have incorrectly believed that Byrd had a duty to align the coupler and that if he did not do so, then a violation of the Automatic Coupler Act could not have occurred.
Our concern here is not with the jury’s verdict per se. The scope of our review is to determine if the appellant’s case could have been prejudiced by the instructions given to the jury. Nothing in this opinion can be interpreted as a finding in support of the merit of the appellant’s claim. When viewed in its entirety, however, we must conclude that the jury instructions regarding liability and burden of proof were misleading, ambiguous, and incomplete. We must, therefore, reverse the judgment and remand this cause.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
STEAGALL, J., recused.