**Garry L. SHUFF, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, a corporation, Defendant.**

**No. 91 C 5326.**

United States District Court, N.D. Illinois, E.D.

March 30, 1993.

James Edward Sullivan, Martin J. Healy, Jr. & Associates, Chicago, IL, for Garry L. Shuff.

David R. Schmidt, Lord, Bissel & Brook, Chicago, IL, for Consolidated Rail Corp.

## MEMORANDUM OPINION AND ORDER

GUZMAN, United States Magistrate Judge.

Pending is the motion of Consolidated Rail Corp. ("CONRAIL") for partial summary judgment on Garry L. Shuff's ("Shuff") complaint.

1. Complaint ¶ 2.

2. Shuff Deposition pp. 5, 12–14.

3. Complaint ¶ 5.

4. Complaint ¶ 5.

5. Shuff Deposition pp. 32–42.

6. Shuff Deposition p. 42.

7. Shuff Deposition p. 74.

8. Shuff Deposition pp. 58–86.

## BACKGROUND FACTS

CONRAIL is a national railroad corporation operating as a common carrier in interstate commerce.[1] Shuff is a resident of Indiana who has been employed by CONRAIL since 1967.[2] On or about June 6, 1990, Shuff was injured while manually adjusting the coupling mechanism on a railroad car.[3] The mechanism had initially failed to couple automatically on impact.[4] Hence, Shuff proceeded to manually center the drawbars on two cars and open the knuckle on one car in order to facilitate coupling.[5] Shuff experienced sharp pain in his lower back while attempting to manually center the drawbar.[6] It is undisputed that Shuff has suffered and continues to experience back pain.[7] Additionally, Shuff has been under the constant care of physicians ever since the incident.[8]

Shuff alleges that CONRAIL violated the Federal Safety Appliance Act ("FSAA"), 45 U.S.C. § 2, for failing to furnish railroad cars with operative couplers so that the cars would couple automatically on impact.[9] In addition, Shuff alleges that CONRAIL violated the Federal Employers' Liability Act (FELA) for failing to furnish Shuff with a reasonably safe place to work.[10]

In response, CONRAIL filed a motion for partial summary judgment claiming no violation of the Federal Safety Appliance Act.[11] CONRAIL argues that the mere failure of cars to couple does not establish a *per se* violation of the FSAA.[12] CONRAIL urges this court to follow a recent Third Circuit decision. *Reed v. Philadelphia, Bethlehem and New England Railroad Company*, 939 F.2d 128, 132 (3rd Cir.1991).[13] In *Reed*, the Third Circuit held that unless equipment is defective, a railroad may defend on the basis

9. Complaint ¶ 7.

10. Complaint ¶ 7.

11. CONRAIL Motion for Partial Summary Judgement ¶ 4.

12. CONRAIL Motion for Partial Summary Judgement ¶ 3.

13. CONRAIL Motion for Partial Summary Judgement ¶ 3.

that the couplers were out of alignment. *Reed*, 939 F.2d at 132. Hence, CONRAIL claims no violation of the FSAA because the railcars failed to couple due to misalignment of drawbars, not due to an equipment defect.[14] Therefore, CONRAIL argues that summary judgment as a matter of law should be granted in its favoras to the FSAA claim based on *Reed*.[15]

In the alternative, CONRAIL states that it is entitled to a special jury instruction that the failure to couple automatically is not a violation of the FSAA unless there is a defect in the coupler itself. *Reed*, 939 F.2d at 132.[16] CONRAIL argues that a jury could conclude that the failure to couple was due solely to a misaligned drawbar, and therefore find no violation of the FSAA.[17]

In response, Shuff argues that *Reed* represents a great departure from existing case law which other circuits have not adopted.[18] Further, Shuff contends that a genuine issue of fact exists as to whether the coupling equipment was defective.[19] Shuff argues CONRAIL's Motion for Partial Summary Judgment should be denied.

## JURISDICTION

This court has jurisdiction pursuant to 45 U.S.C. § 56 and 28 U.S.C. § 1331.

## DISCUSSION

Defendant CONRAIL moves this court for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure that CONRAIL did not violate the Federal Safety Appliance Act ("FSAA"). The United States Supreme Court set forth the following principles to be applied in ruling on a motion for summary judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." By it's very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion or categorizing claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine." That is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

14. CONRAIL Motion for Partial Summary Judgement ¶ 4.

15. CONRAIL Motion for Partial Summary Judgement ¶ 5.

16. CONRAIL Motion for Partial Summary Judgement ¶ 5.

17. CONRAIL Motion for Partial Summary Judgement ¶ 5.

18. Shuff's Response to Motion for Partial Summary Judgement, ¶ 3.

19. Memorandum in Support of Shuff's Response to Motion for Partial Summary Judgement p. 8.

The Court went on to say that "at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505.

When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, or is not more than a scintilla, a summary judgment may be granted. The substantive evidentiary standard of proof that would not apply at a trial on the merits applies on a motion for summary judgment. *Id.* at 251–52, 106 S.Ct. at 2512.

Further, Local Rule 12(m) requires a party opposing a motion for summary judgment to file, in addition to the evidentiary materials allowed by Rule 56(e), a response listing the assertions by the movant with which the opponent disagrees. *Bell, Boyd, & Lloyd v. Tapy,* 896 F.2d 1101, 1102 (7th Cir.1990). The list must be supported by specific references to the evidentiary materials relied on and must set forth any additional facts that require denial of summary judgment, also supported by specific references in the record. Any facts asserted by the movant and not contradicted in the manner specified by the Rule are deemed admitted pursuant to Local Rule 12(*l*) and (m). *Id.* at 1102.

This issue of whether a misaligned drawbar is a defense to liability under the Federal Safety Appliance Act has not been addressed to this circuit. Because there is a split in the other federal circuits, this court must predict whether CONRAIL is entitled to use the misalignment of a drawbar as a defense to FSAA liability.

Section 2 of the FSAA requires railroads to use cars "equipped with couplers coupling automatically on impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The Federal Safety Appliance Act, 45 U.S.C. § 2.

In interpreting this Section, the Supreme Court originally held that the FSAA imposed absolute liability on railroads any time two cars failed to couple automatically upon impact. *O'Donnell v. Elgin, Joliet & Eastern Ry. Co.,* 338 U.S. 384, 390, 70 S.Ct. 200, 204, 94 L.Ed. 187 (1949). "A failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong." *Id.* The FSAA requires railroads to use safety equipment which performs "on the occasion in question." *Affolder v. New York, Chicago & St. Louis R.R. Co.,* 339 U.S. 96, 98, 70 S.Ct. 509, 510, 94 L.Ed. 683 (1950); *Carter v. Atlanta & St. Andrews Bay Ry. Co.,* 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236 (1949). Hence, the Supreme Court initially interpreted the FSAA to impose absolute liability on a railroad for all injuries proximately resulting from the failure of railcars to couple. *Id.*

Subsequently however, the Supreme Court has recognized one defense to liability. *Affolder v. New York, Chicago & St. Louis R.R. Co.,* 339 U.S. 96, 99, 70 S.Ct. 509, 511, 94 L.Ed. 683 (1950). After stating the *O'Donnell* rule of absolute liability, the Court continued, "Of course this assumes that the coupler was placed in a position to operate on impact." *Id.* The Court then held that a railroad has a defense to liability if the failure to couple on impact is due to a coupler knuckle not being opened properly. *Id.* Most courts have limited the *Affolder* holding to closed knuckles and have denied railroads a defense for misaligned drawbars. *Clark v. Kentucky & Indiana Terminal R.R.,* 728 F.2d 307, 313 (6th Cir.1984); *Metcalfe v. Atchison, Topeka and Santa Fe Ry. Co.,* 491 F.2d 892, 897 (10th Cir.1974); *Kansas City Southern Ry. Co. v. Cagle,* 229 F.2d 12, 14 (10th Cir.1956), *cert. denied,* 351 U.S. 908, 76 S.Ct. 697, 100 L.Ed. 1443; *McGee v. Burlington Northern Inc.,* 174 Mont. 466, 571 P.2d 784 (1977); *Hallada v. Great Northern Ry.,* 244 Minn. 81, 69 N.W.2d 673, 680, *cert. denied,* 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955); *Reynolds v. Alton & Southern Ry. Co.,* 115 Ill.App.3d 88, 70 Ill.Dec. 929, 450 N.E.2d 402 (5th Dist.1983); *Buskirk v. Burlington Northern, Inc.,* 103 Ill.App.3d 414, 59 Ill.Dec. 125, 431 N.E.2d 410 (5th Dist.1982).

The Sixth Circuit most recently followed this view in *Clark v. Kentucky & Indiana Terminal R.R.*, 728 F.2d 307, 313 (6th Cir. 1984). In *Clark*, the plaintiff railroad worker was injured while attempting to realign a drawbar. *Clark*, 728 F.2d at 309. The defendant claimed that a railroad may defend against FSAA liability if the drawbars were misaligned before the attempted coupling. *Id.* The court denied the defendant railroad's argument based on the Supreme Court's *Affolder* decision. *Id.* The *Clark* court emphasized that the Supreme Court had not suggested a defense for misaligned drawbars. *Id.* Instead, the defense to FSAA liability announced in *Affolder* is limited to closed knuckles. *Id.*

The *Clark* court pointed to a number of other reasons not to extend the defense in *Affolder* to include misaligned drawbars. A coupler knuckle in perfect working condition has two settings: opened or closed. *Clark*, 728 F.2d at 313. Hence, one knuckle must be opened or the two cars will not couple automatically. By contrast, drawbars are not designed to require any adjustment. Instead, drawbars become misaligned with wear. *Clark*, 728 F.2d at 312; *Hallada v. Great Northern Ry.*, 244 Minn. 81, 69 N.W.2d 673, 680, *cert. denied*, 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955). The typical lateral play of one to one and one-half inches does not interfere with automatic coupling on newer equipment. *Clark*, 728 F.2d at 312. However, cars will not couple automatically if the drawbars are out of alignment beyond the normal play. *Id.* Therefore, unlike the coupler knuckle's position, misalignment of drawbars is attributable to aging equipment. *Clark*, 728 F.2d at 313.

Also, unlike closed knuckles, allowing a defense for misaligned drawbars defeats the basic purpose of Section 2 of the FSAA. Section 2 was specifically designed to protect railworkers injured when going between cars when the cars have initially failed to couple automatically. *Buskirk v. Burlington Northern, Inc.*, 103 Ill.App.3d 414, 59 Ill.Dec. 125, 431 N.E.2d 410 (5th Dist.1982). A closed knuckle may be opened by operation of a lever on the side of the car, placing the worker in relatively little danger. *Clark*, 728

F.2d at 313. By contrast, railworkers step between two cars to manually realign a drawbar. *Id.* Therefore, misaligned drawbars create a higher risk of injury or death because workers must step between the cars to make the adjustment.

However, the Third Circuit recently held that a railroad may defend against a violation of the FSAA when drawbars are misaligned prior to coupling. *Reed v. Philadelphia, Bethlehem and New England R.R. Co.*, 939 F.2d 128, 132 (3rd Cir.1991). In *Reed*, the plaintiff railworker was injured while stepping between two railcars which had failed to couple. *Reed*, 939 F.2d at 129. The Railroad argued that the two cars initially failed to couple because the drawbars were out of alignment. *Id.* On appeal, the Third Circuit court upheld the trial judge's jury instruction that the railroad had a defense to liability if the couplers were out of alignment. *Reed*, 939 F.2d at 132.

The Third Circuit relied heavily on two cases in *Reed*: *United Transp. Union v. Lewis*, 711 F.2d 233 (D.C.Cir.1983) and *Maldonado v. Missouri P. Ry. Co.*, 798 F.2d 764 (5th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987). Based on *Lewis* and *Maldonado*, the Third Circuit concluded that the defense of closed knuckles should be extended to include misaligned drawbars. *Reed*, 939 F.2d at 132. After taking a closer look at *Maldonado* and *Lewis*, this court finds the *Reed* decision unpersuasive.

The *Maldonado* court was first to suggest that a railroad may have a defense to a violation of the FSAA if cars did not couple automatically due to misaligned drawbars. *Maldonado*, 798 F.2d at 768. In *Maldonado*, the plaintiff injured his back while attempting to realign a drawbar on a car that had failed to couple automatically. *Maldonado*, 798 F.2d at 766. The railroad then claimed it had a defense to FSAA liability because of misaligned drawbars. *Maldonado*, 798 F.2d at 768. However, the *Maldonado* court declined to decide whether a railroad may have a defense of misaligned drawbars because the railroad did not produce any evidence to support such a defense. *Id.*

Nonetheless, the *Maldonado* court went on to suggest the possibility of a defense of misaligned drawbars. *Id.* The *Maldonado* court stated that because the FSAA is essentially an equipment safety statute, drawbar misalignment should be a defense to failure to couple when the misalignment is not due to defective or failed equipment. *Id.* The *Reed* court agreed with *Maldonado* that the FSAA is essentially an equipment safety statute and that drawbar misalignment should be a defense. Both courts relied on a statutory interpretation of Section 2 of the FSAA in *United Transp. Union v. Lewis,* 711 F.2d 233, 243–247 (D.C.Cir.1983).

This court finds, however, both the *Reed* and *Maldonado* interpretations of *Lewis* unpersuasive. A closer look at *Lewis* reveals that Section 2 requires more from the railroads than merely providing safety equipment. In *Lewis,* the court comprehensively discussed Section 2 of the Safety Appliance Act. *United Transp. Union v. Lewis,* 711 F.2d 233, 243–247 (D.C.Cir.1983). A railworker's union had challenged a decision by the Secretary of Transportation that the use of metal hooks to open coupler knuckles did not violate the Act. *Lewis,* 711 F.2d at 233. The *Lewis* court looked at the statutory language and the legislative history of the FSAA and held that the predicate of liability under Section 2 is the failure to provide equipment that functions as the statute requires. *Lewis,* 711 F.2d at 245. Based on the *Lewis* language, the *Maldonado* and *Reed* courts concluded that the FSAA is essentially an equipment safety statute. *Maldonado,* 798 F.2d at 768; *Reed,* 939 F.2d at 131.

 However, the *Lewis* court also recognized that the FSAA requires more from the railroads than just safety equipment. In *Lewis,* the court noted that "At the same time, . . . *actual failure* to couple automatically because of a misaligned drawbar or a closed coupler is sufficient to establish liability under Section 2." *Lewis,* 711 F.2d at 251 n. 39. Further, the court said ". . . Congress imposed on railroads a duty not just to *provide* proper equipment, but also to *guarantee its performance.*" *Id.* Hence, Section 2 of

the FSAA requires not only proper equipment but guaranteed performance. Therefore, we hold that misalignment before coupling is not a defense to Section 2 of the FSAA.

In the alternative, defendant CONRAIL has asked this court for a ruling on the following jury instruction: it is not a violation of the Safety Appliance Act when couplers fail to couple automatically, if the failure to couple can be attributed to misaligned drawbars or closed knuckles and not some defect in the equipment.[20] For the reasons listed above, this instruction should not be adopted.

## CONCLUSION

This court finds as a matter of law that a railroad may not use misaligned drawbars as a defense to liability for a violation of Section 2 of the Federal Safety Appliance Act. Therefore, CONRAIL's motion for partial summary judgement is DENIED.

**IT IS SO ORDERED.**

**20.** CONRAIL Motion for Partial Summary Judgement ¶ 5.