**J. R. COBB, Plaintiff-Appellee,**

v.

**UNION RAILWAY COMPANY,**
**Defendant-Appellant.**

**No. 15051.**

United States Court of Appeals
Sixth Circuit.

May 24, 1963.

J. Martin Regan, Memphis, Tenn., G.
Wynn Smith, Jr., Memphis, Tenn., on
brief; Canada, Russell & Turner, Mem-
phis, Tenn., of counsel, for appellant.

Thomas R. Prewitt, Memphis, Tenn.,
Thomas F. Johnston, R. G. Draper, Mem-
phis, Tenn., on brief; Armstrong, Mc-
Cadden, Allen, Braden & Goodman,
Memphis, Tenn., of counsel, for appellee.

Before CECIL, Chief Judge, WEICK, Circuit Judge, and TAYLOR, District Judge.

ROBERT L. TAYLOR, District Judge.

Plaintiff-Appellee, J. R. Cobb, obtained a verdict for $45,000.00 against Union Railway Company based on the Federal Safety Appliance Act (45 U.S.C. § 2)[1] and multiple violations of the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.). The Railway Company appealed from the judgment entered on the verdict.

All of the questions presented by the appeal relate to the Federal Safety Appliance Act. Defendant contends that the District Judge erred in a portion of his charge, and in refusing to charge its Special Requests Nos. 1 and 3.

The accident occurred in the early morning between 4:00 and 5:00 A.M. while the defendant's train crew was engaged in switching operations at its Parkway Yard in Memphis, Tennessee. Cobb's job was that of Yardmaster, but he assisted the train crew in switching operations at various times. This practice was not unknown to other yardmasters who worked for the Railway Company.

Cobb was injured while on top of a boxcar that was standing at the end of a cut of cars on a spur track located north of Olive Street in Memphis. The spur track is referred to in the record as "Whiskey Track" and runs in a curving and northeasterly direction from a main line track on which the defendant railroad operates its trains. The "Whiskey Track" was used for storage of cars and on the occasion of the accident ten cars were stored there. The car from which plaintiff was knocked was the last car of the ten, and was most distant from the junction of the "Whiskey Track" with the main track.

Prior to the accident, Cobb noticed that the brake on the last car of the ten was set. Realizing that the crew intended to move the last two cars of the ten cars stored on the "Whiskey Track" and switch them to the Pillsbury track and spot them at the Pillsbury plant, plaintiff decided to release the brake on the last car of these ten in order to prevent it from being damaged when the train started to move. The other members of the crew didn't know where plaintiff was, or that he intended to release the brake. The switch engine was run down the main track and then into the "Whiskey Track" and made contact with the lead car. The couple between the switch engine and the lead car was successful.

It was the crew's intention to pick up all the ten cars as shown by defendant's Answer and the testimony of the crewmen themselves. After the engine coupled with the first of the ten cars, one of the crewmen stationed himself at the Olive Street Crossing to count them as they passed and found that two of the cars were not attached to the train. The engineer was thereupon signaled that two of the cars were missing from the original ten and he returned to the "Whiskey Track" with the engine and the eight cars attached for the purpose of coupling the rear of the eight cars to the front one of the two that had been left. Cobb was standing near the rear of the second of the two cars at the time of the attempt to couple them with the other eight of the unit. He had his hands on the ladder or grabiron, awaiting the coupling of the cars before climbing to the top. After feeling the vibration which he stated was caused by an impact, he climbed on top of the car and knocked the brake off and then started back down. At that moment, the cars made another impact which knocked him from the top of the car to the ground. He stated that it was an everyday experience for him, over a period of forty years railroad service, to hold onto the ladders and grab-

1. "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

irons of boxcars and that he believed the cars had coupled when he felt the vibration caused from the first impact.

Defendant's Special Request No. 1 was as follows:

"Under the provisions of the Safety Appliance Act requiring that cars be equipped with couplers automatically coupling by impact, I charge you, Ladies and Gentlemen, that the word 'impact' as used in this context means impact at the point in the train where the couple is sought to be made. The word 'impact' does not extend to impact at any other point further on down a cut of cars from the point where the couple is sought to be made. In other words, if you find in this case that there were, for example, two separate cuts of cars standing upon the 'Whiskey Track,' one of them consisting of six to eight cars, for example, the other cut consisting of, say, two to three cars, and if you further find that the switch engine in this case sought to couple with the first cut of cars, that is the six to eight car cut, and in so doing, pushed this cut back into the second cut of cars, then there would be no failure to couple on impact where the couple was made between the engine and the first cut of cars, but was not made between the first cut of cars and the second cut of cars."

In order to put the trial court in error for failing to charge as requested, the request must correctly state the applicable law. The jury could have concluded from the language in this request that plaintiff's entire case, as it related to the Federal Safety Appliance Act, turned on the question whether a proper coupling was made on the impact between the couplers on the engine and the first of the eight cars that were stored on the "Whiskey Track." This was but one of the issues. Another was whether the engine properly coupled with the ten cars so as to move them as a unit and that thereafter the eighth and ninth cars separated because of a defect in the couplers.

As previously noted, defendant's Answer admitted that the crewmen intended to take all of the ten cars from the "Whiskey Track" at the time of the first movement there by the switch engine. One or more of the crewmen testified that that was their intention and that they believed that they had joined all of the ten cars with the switch engine until the crewman stationed at the Olive Street Crossing discovered that two of them had been left behind.

The jury could have found that the couplers were properly set on the rear car of the eight cars and the front car of the two cars and that they failed to automatically couple by impact due to defect in one or more of the couplers. Or, the jury could have found that the eight cars initially coupled with the two cars and thereafter uncoupled because of a defect in the couplers. In either event, the only issue that would remain was whether the failure to automatically couple upon first impact or the fortuitous uncoupling of the two cars was the proximate cause of plaintiffs' injuries.

■ The Safety Appliance Act requires that cars remain coupled until freed by some purposeful act after a coupling is effected. O'Donnell v. Elgin, Joliet & E. R. Co., 338 U.S. 384, 389, 70 S.Ct. 200, 94 L.Ed. 187.

■ If a violation is established, only the proximate cause of the injuries remains as an issue. Carter v. Atlanta & St. A. B. R. Co., 338 U.S. 430, 434, 70 S.Ct. 226, 94 L.Ed. 236. If a violation is a contributory proximate cause of the injury, a jury may find for the plaintiff. Ibid., 435, 70 S.Ct. 229.

■ We believe that the language of this request was too restrictive and did not contain an accurate statement of law as applied to the facts in our case.

■ Defendant further contends that the District Judge erred in charging the jury as follows:

"The Court further charges you that if couplers fail to couple automatically because they are not properly set for coupling under the cir-

cumstances, this failure of the cars to couple is not a violation of the Safety Appliance Act, but if they fail to couple automatically by impact for any other reason, then there would be a violation of the Safety Appliance Act. The Court further charges you that if you find by the preponderance of the evidence that cars did in fact fail to couple automatically on impact, you may infer from that fact but you are not required so to infer that the failure to couple was under such circumstances as to constitute a violation of the Safety Appliance Act."

Defendant contends that there was no basis for this portion of the charge as there was no proof that the couplers were properly set and that the burden of proof was upon the plaintiff to show that the couplers were properly set before there could be a violation for failure to automatically couple upon impact.

More time was devoted to this point in the oral argument than to any other. The issue was whether the circumstance that the cars failed to couple automatically upon the initial impact of the second movement, the evidence of which circumstance was based on Cobb's testimony of the vibration that he felt while his hands were on the grabiron of the car, was a sufficient probative circumstance from which the jury could have inferred that the couplers were properly set but failed to automatically couple on the initial impact and automatically coupled on the second impact of this particular operation.

Another factor that could have been considered was whether there was an impact between these cars when the switch engine was first attached to the first eight of the ten. The record is not clear on the question whether the ten were attached when the engine started to move them and became separated in the first movement or failed to couple at all in the first impact in this operation. If there was such impact upon the first movement and eight and nine failed to automatically couple, then there were

three impacts as contended by the plaintiff in his brief.

There were probative circumstances from which the jury could have inferred that the couplers were properly set on the first or second impact, or both, and did not automatically couple upon either but successfully coupled on the third impact.

Each of the crewmen testified that he did not remember whether the couplers were properly set at the time of either of the impacts, except the impact that attached the switch engine to the first of the ten cars. It was the duty of the switchman to signal the engineer that the couplers were properly set before coupling. Since the impact was successful (whether the second or third), the jury could reasonably have inferred that the couplers were properly set but failed on the previous try (or tries) to automatically couple.

■ There is authority that a violation of the Act is shown by proof that cars failed to couple automatically by impact. Southern Railway Co. v. Stewart, 119 F.2d 85, 87 (C.A. 8).

We think there were probative circumstances from which the jury could have drawn the inference that there were three impacts, that the couplers were properly set at the time of the second impact, or the first of the last movement of the train immediately before the accident, and that the cars failed to automatically couple upon that impact but successfully coupled on the third impact and that the District Judge was correct in giving this portion of the charge. St. Louis S. W. Ry. Co. v. Ferguson, 182 F.2d 949 (C.A. 8).

The Court of Appeals for the Eighth Circuit in the case of New York, C. & St. L. R. R. Co. v. Affolder, 174 F.2d 486, at 488 stated:

"The parties are in agreement that the failure of the Pennsylvania and Rock Island cars to couple on impact was sufficient evidence from which the jury could, if it saw fit, properly infer that defendant had violated the Safety Appliance Act in

not equipping its cars with 'couplers coupling automatically.' That is the law."

The Eighth Circuit was of the opinion that the trial court in his charge left the impression with the jury that failure of the cars to automatically couple upon impact conclusively established defendant's violation of its duty to furnish couplers that would automatically couple upon impact. This portion of the charge and other portions led the Upper Court to believe that the trial judge deprived the Railroad of its defense that plaintiff failed to carry the burden by showing that the couplers were in a proper position for coupling at the time of impact. The Supreme Court reversed the appellate court and stated in substance that the charge was sufficient to permit a finding of the jury that the couplers were properly set at the time of impact and failed to automatically couple. Affolder v. New York, C. & St. L. R. R., 339 U.S. 96, 99, 70 S.Ct. 509, 94 L.Ed. 683.

The District Judge in our case, in other parts of his charge, told the jury that the burden of proof was upon the plaintiff to show that his injuries were proximately caused by the defendant's violation of the Safety Appliance Act before there could be a recovery on this phase of the case and that the plaintiff was required to carry the burden by the preponderance of the evidence.

It is to be noted that the District Judge properly told the jury that they could not find a violation of the Act if the couplers failed to automatically couple if they were not properly set, but if they failed for any other reason then there would be a violation. Also, that if the couplers failed to couple automatically upon impact the jury could infer from that fact, but they were not required to infer, that the failure was under circumstances constituting a violation of the Act.

The teaching of the Affolder case is that this portion of the charge did not deprive defendant of its defense that plaintiff failed to carry the burden of proof by showing that the couplers were properly set at the time they failed to automatically couple. See: O'Donnell v. Elgin, Joliet & E. R. Co., supra; Carter v. Atlanta & St. A. B. R. Co., supra.

Finally, defendant complains of the denial of Request No. 3, which was in this language:

"I further charge you, Ladies and Gentlemen, that the burden of proving that the failure to couple was not due to the fact that the coupler had not been properly opened, is upon the plaintiff. Therefore, if you find that the coupler in question, which allegedly failed to couple upon impact, was not open, or if you find that you are not able to determine whether such coupler was open without guessing at the matter, then you must find for the defendant, The Union Railway Company, on this phase of the case."

■ The District Judge told the jury in another part of his charge that if they found that the couplers failed to couple automatically because they were not properly set that such failure would not be a violation of the Act. This was an accurate statement of law and covered defendant's point made in Request No. 3.

A trial judge cannot be put in error because he failed to use the identical language contained in a request if his charge is in all other respects sufficient.

■ Flaws can be found in almost any charge by separating certain paragraphs from the whole. Thus, the charge must be considered as a whole to determine whether it gives the jury a correct understanding of the propositions which they are to decide and the pertinent principles of law which shall guide them in their decision. S. S. Kresge Co. v. McCallion, 58 F.2d 931, 934 (C.A. 8).

We think that the point made in Request No. 3 was sufficiently covered by the District Judge and that he did not err in his refusal to give such request.

We are satisfied that the charge as a whole correctly stated the relevant principles of law that were to guide the jury

in their decision of the factual questions relating to the Federal Safety Appliance Act.

The judgment of the District Court is affirmed.