829 F.2d 38
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jozsef GYURGYIK, Plaintiff-Appellee,
v.
PRECISE TOOL AND DIE COMPANY, Defendant-Appellant.
 No. 86-3488
 United States Court of Appeals, Sixth Circuit.
 September 16, 1987.
 
 Before CORNELIA G. KENNEDY, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Precise Tool & Die Company ('Precise') appeals the order of the District Court awarding plaintiff-appellee Jozsef Gyurgyik ('Gyurgyik') $325,000. On appeal Precise raises four issues: 1) whether the District Court erred in refusing to set aside the jury's verdict that Precise violated the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621, et seq. ('ADEA'); 2) whether the District Court erred when it denied Precise's motion for a directed verdict on that claim; 3) whether the District Court erred in affirming the jury's verdict of willful violation of the ADEA; and 4) whether the District Court improperly instructed the jury with respect to Gyurgyik's state contract law claim. For the reasons set forth below, we affirm the District Court as to the verdict of a violation of the ADEA and the denial of Precise's motion for a directed verdict, but we reverse as to the verdicts of willful violation of the ADEA and breach of contract.
 
 
 2
 Precise employed Gyurgyik as a lathe hand operator from 1971 until April, 1977, when it discharged Gyurgyik. Precise rehired Gyurgyik in October, 1978. Gyurgyik claims that when Precise rehired him, Precise orally promised him a job until he retired, and further promised to raise his wages by fifty cents per hour every six months.
 
 
 3
 Precise raised Gyurgyik's wages by fifty cents per hour every six months, with one exception, until September, 1982. Gyurgyik testified at trial that when he complained about not receiving a raise in September, the foreman, Kenneth McCreight ('McCreight') told him that if he didn't like it he would 'bring for [sic] the young man who work cheaper and faster.' Joint Appendix at 54.
 
 
 4
 In March, 1983, McCreight fired Gyurgyik, who was then 56, telling him that he worked too slowly. Gyurgyik brought suit in the U.S. District Court for the Northern District of Ohio, alleging that Precise and its owner, Steve Hunyadi, had violated the ADEA and Ohio Rev. Code Sec. 4101.17 (which prohibits age discrimination by employers), had breached Gyurgyik's employment contract, and had inflicted emotional distress.
 
 
 5
 At trial, the District Court denied Precise's motion for a directed verdict at the close of Gyurgyik's case. At the close of all the evidence, the court denied Gyurgyik's motion for a directed verdict and also denied Precise's motion for a directed verdict as to the ADEA claim and the unlawful discharge claim, but granted the motion as to the claim of infliction of emotional distress. The jury returned a verdict in favor of Gyurgyik, awarding him $75,000 for back pay, $75,000 in liquidated damages for willful violation of the ADEA and $175,000 compensatory damages for breach of contract, a total of $325,000. Precise appealed.
 
 I.
 
 6
 The first issue is whether the District Court erred in failing to set aside the jury's verdict that Precise had violated the ADEA. The standard for reviewing a jury verdict is whether it is supported by substantial evidence. Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1570 (Fed. Cir. 1986), cert. dismissed, 107 S. Ct. 1262 (1987). 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).
 
 
 7
 To establish a prima facie case under the ADEA, Gyurgyik had to prove that: 1) he was between forty and seventy years of age; 2) he was discharged; 3) he was qualified for the position; and 4) he was replaced by a younger person. Wilkins v. Eaton Corp., 790 F.2d 515, 520 (6th Cir. 1986). Once a plaintiff has established a prima facie case of age discrimination, the defendant can destroy the presumption of a violation by showing by a preponderance of the evidence a legitimate, nondiscriminatory reason for the discharge. Id. at 521. Once the defendant has done that, the plaintiff must show by a preponderance of the evidence that the defendant's stated reason is merely a pretext. Id. The plaintiff can do this either by affirmative evidence that age played an impermissible role in the decision[1] or by showing that the proferred nondiscriminatory reason does not merit credence. Horn v. Bibb County Comm'n, 713 F.2d 689, 691 (11th Cir. 1983).
 
 
 8
 Precise argues that to prove he was qualified for the position, Gyurgyik had to show that he was performing it 'at a level that met his employer's legitimate expectations.' Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979). Precise contends that Gyurgyik worked too slowly and thus was not meeting Precise's legitimate expectations. Gyurgyik testified, however, that he was an experienced lathe worker and that he worked on the most difficult jobs, and that his work was satisfactory. Joint Appendix at 46-47, 56. This testimony constitutes substantial evidence upon which a jury could find that Gyurgyik was qualified for the position.
 
 
 9
 Precise attempted to rebut Gyurgyik's prima facie case with McCreight's and Hunyadi's testimony that Gyurgyik had been fired not because of his age but because he had been working too slowly. Joint Appendix at 27, 67-72. Gyurgyik testified that McCreight had told him his work rate was the reason he was being fired, Joint Appendix at 58, but he also testified that McCreight had threatened to 'bring for [sic] the young man who work cheaper and faster.' This evidence that age was one reason Precise fired Gyurgyik is slim, but it is 'more than a mere scintilla.' The District Court was correct in affirming the jury's verdict that Precise had violated the ADEA.
 
 II.
 
 10
 Precise's second issue is whether the District Court erred when it failed to grant Precise's motion for a directed verdict.[2] Precise argues that Gyurgyik failed to rebut Precise's evidence of a legitimate, nondiscriminatory reason for the discharge, i.e., that Gyurgyik had worked too slowly. A case should be submitted to the jury '[w]hen the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict.' Brady v. Southern Ry. Co., 320 U.S. 476, 479 (1943). In view of Gyurgyik's testimony that McCreight had threatened to replace him with a younger man although he was doing the job satisfactorily, a weighing of the credibility of the witnesses was required, and the District Court properly submitted the case to the jury.
 
 III.
 
 11
 The third issue raised by Precise is whether the District Court erred in affirming the jury's verdict that Precise had willfully violated the ADEA, thus entitling Gyurgyik to liquidated damages under 29 U.S.C. Sec. 626. As noted before, the standard of review is whether the verdict was supported by substantial evidence.
 
 
 12
 A violation of the ADEA is willful if "the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985) (quoting Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc., 713 F.2d 940, 956 (2d Cir. 1983)). In Thurston, the employer had met with its lawyers to determine whether their mandatory retirement policy violated the ADEA. The employer adopted a new plan, which was found to violate the ADEA. The Supreme Court held that a violation is not willful if the employer 'simply knew of the potential applicability of the ADEA,' or if the employer only knew that the ADEA was 'in the picture.' Thurston at 127-28. The Court found that the employer had not willfully violated the ADEA.
 
 
 13
 In the case at hand, the only evidence that Precise had willfully violated the ADEA was the following testimony of its owner, Steve Hunyadi:
 
 
 14
 THE COURT: What was it you said was against the law?
 
 
 15
 THE WITNESS: To fill out how tall are you, how old are you, where were you born, did you have any physical--like missing hands or whatever. I can't think of the word, but that's illegal now to ask those questions for a new application what we're using. In the last six, seven years, that's what it said, that you cannot ask how old is a person, and under that it said between 40 and up you are discriminating against the person if you ask his age or whatever.
 
 
 16
 THE COURT: Okay.
 
 BY MR. COHN:
 
 17
 Q. So, at the time Mr. Gyurgyik was fired, you were well aware of the age discrimination statutes?
 
 
 18
 A. I was aware of it, yes.
 
 
 19
 Joint Appendix at 40-41. Given that mere knowledge of the potential applicability of the ADEA is insufficient for willfulness, this evidence is insufficient to support the jury's verdict that Precise willfully violated the ADEA, and we reverse the District Court's order awarding $75,000 in liquidated damages.
 
 IV.
 
 20
 Precise's final issue is whether the District Court improperly instructed the jury with respect to Gyurgyik's claim that Precise had breached his employment contract. The District Court instructed the jury that '[t]he promises made on one side and entered in upon and acted upon by the other would be sufficient to make it a binding contract.' Joint Appendix at 93.
 
 
 21
 Precise argues that under Ohio law a contract for permanent or life employment merely establishes an indefinite general hiring which is terminable at the will of either party. Therefore, Precise contends it did not breach a contract when it fired Gyurgyik and the claim should not have been submitted to the jury.
 
 
 22
 Precise did not move for a directed verdict or object to the instruction at trial. Fed. R. Civ. P. 51 provides in pertinent part that '[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict.' Federal courts, however, have recognized a narrow exception to this general prohibition in those cases 'where the error was 'obvious and prejudicial' and required action by the reviewing court 'in the interests of justice." Batesole v. Stratford, 505 F.2d 804, 808 (6th Cir. 1974). To take advantage of this doctrine, the error in the jury instructions must be 'so 'plain' the trial judge and [attorney] were derelict in countenancing it.' United States v. Frady, 456 U.S. 152, 163 (1982). A reviewing court must review the charge as a whole to determine whether it gives the jury a correct understanding of the petinent principles of law. Cobb v. Union Ry. Co., 318 F.2d 33, 37 (6th Cir.), cert. denied, 375 U.S. 945 (1963).
 
 
 23
 In Ohio, contracts for employment for an indefinite duration are terminable at the will of either party. Henkel v. Educational Research Council, 45 Ohio St. 2d 249, 344 N.E.2d 118 (1976). Cases have treated contracts for permanent or life employment as contracts for an indefinite duration. In Henkel the Ohio Supreme Court stated that
 
 
 24
 '[g]enerally speaking, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and a discharge without cause does not constitute a breach of such contract justifying recovery of damages.'
 
 
 25
 45 Ohio St. 2d at 255, 344 N.E.2d at 121-22 (dicta) (quoting Forrer v. Sears, Roebuck & Co.,[3] 36 Wis. 2d 388, 393, 153 N.W.2d 587, 589 (1967)).[4] See also Mers v. Dispatch Printing Co., 19 Ohio St. 3d 100, 102, n.1, 483 N.E.2d 150, 153 n.1 (1985).
 
 
 26
 Gyurgyik argues that his employment contract with Precise was not for life long employment, but was for employment until he reached 65, a fixed term. Kyer v. K Mart Corp., No. 12865, unreported opinion of the Ohio Ct. App. (9th Dist., April 29, 1987)[5] rejected a similar argument. In that case, the plaintiff alleged that the defendant, K Mart Corp., had induced him to leave previous employment and to come work for K Mart through oral promises of lifetime job security. The trial court had instructed the jury that contracts for permanent or life employment are terminable at will by either party. The plaintiff challenged the instruction on appeal, claiming that it mischaracterized his employment contract as one for permanent employment, when in fact it was one of fixed duration, from the time of the contract until the plaintiff reached the retirement age of 65. The court of appeals dismissed the argument as a 'distinction without a difference,' holding that a contract for employment until the employee retires is one for permanent employment, and as such is terminable at will by either party. We agree. See also Frankart v. Jeep Corp., at 3-5, No. L-85-062, unreported opinion of the Ohio Ct. App. (6th Dist., Nov. 8, 1985).
 
 
 27
 Gyurgyik's claim for breach of an employment contract does not state a cause of action under Ohio law. In spite of this, the District Court submitted the claim to the jury, and failed to instruct them as to the law of permanent employment contracts in Ohio. In so doing, the District Court committed plain error, and we reverse the District Court's order awarding Gyurgyik $175,000 for his state contract claim.
 
 
 28
 The judgment of the District Court is AFFIRMED in part and REVERSED in part. The action is remanded to the District Court with directions to set aside the judgment on the liquidated damages and state contract claims and to enter judgment for the plaintiff on the back pay claim in the amount of $75,000.
 
 
 
 [1]
 Age need not be the sole reason for the discharge. A plaintiff can prevail if he establishes that "but for' his employer's motive to discriminate against him because of his age, he would not have been discharged.' Wilkins at 520 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir. 1979))
 
 
 [2]
 Precise made two motions for a directed verdict, one at the close of the plaintiff's case, and one at the close of all the evidence. The second motion was only as to the ADEA, unlawful discharge and infliction of emotional distress claims. In its brief, Precise only argues that the District Court should have granted Precise's motion as to the ADEA claim
 
 
 [3]
 Although none of the Ohio cases give a reason for the rule, Forrer reasoned that the rule is 'grounded on the policy that it would otherwise be unreasonable for a man to bind himself permanently to a position, thus eliminating the possibility of later improving that position.' Forrer, 36 Wis. 2d at 394, 153 N.W.2d at 590. The court also thought that 'a contract for permanent employment is by its very nature indefinite.' Id
 
 
 [4]
 Henkel did not distinguish between oral and written contracts. The case involved a written contract which provided for an annual rate of compensation, but did not provide for a specific term of employment. The court held that the contract was terminable at the will of either party
 
 
 [5]
 The Ohio Supreme Court's Rule 2(G) For the Reporting of Opinions states that unpublished opinions of the courts of appeals are only persuasive, not controlling, authority